(Decided March 16th, 1860.)

# WILLIAM T. WALTERS and CHARLES HARVEY *vs.* SAMUEL BROWN.

As a *general rule*, where the endorser and the party required to give him notice reside in the same town or city, the notice must be given to him

personally, or at his domicil or place of business, and notice through the Post Office will not be sufficient, unless proved to have actually reached him in due time.

But, in *a large commercial city*, where the parties live within the limits of a *penny-post*, or *letter-carrier*, whose duty it is to carry letters from the Post Office daily, and the party entitled to notice is accustomed to receive his letters from such carrier, notice put into the Post Office soon enough for the party to receive it in due time, is sufficient.

APPEAL from the Court of Common Pleas.

*Assumpsit* brought on the 4th of May 1858, by the appellants, as endorsees, against the appellee, as endorser, of a promisory note for $431.84, drawn by John F. McJilton and endorsed by Edward Spedden, Samuel Brown, and W. T. Walters & Co. The note is dated "Baltimore, Feb. 1857," payable at four months, to blank order. The plaintiffs, who constitute the firm of W. T. Walters & Co., placed the note in the Farmers and Planters Bank of Baltimore for collection, and, not being paid at maturity, it was duly protested.

The facts of the case are fully stated in the opinion of this court. In the course of the trial, the plaintiffs excepted to the ruling of the court below (MARSHALL, J.) in refusing their prayers, and granting the prayer of the defendant, and the verdict and judgment being in favor of the defendant, the plaintiffs appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and BARTOL, J.

*Wm. A. Fisher,* for the appellants:

As the defendant was supplied by the *penny-post,* a notice so sent was sufficient. It is laid down in *Byles on Bills,* 219, that a notice sent by the two-penny-post is sufficient, where the parties reside in the same place. And in *Smith vs. Mullett,* 2 *Camp.,* 208, the same point is settled by Lord Ellenborough. In the case of *Bell vs. The Hagerstown Bank,* 7 *Gill,* 225, the court, in speaking of the proper notice of protest, say: "As in large commercial towns it is now the uniform practice to reach the party to be affected by the no-

tice through the Post Office, where the parties both reside within the limits of the penny-postman." The court here seems to treat the sufficiency of such notice as an established principle of the law-merchant, and as conclusive, at any rate, in the absence of proof of custom requiring any other mode of delivery. The propriety of sending such a notice through the Post Office, where it appears that the party to be charged is served by the penny-post, is not only established by a current of authority abroad, and certainly in Maryland, but would seem to rest upon the soundest principles of justice, and to be perfectly consistent with even the severest construction of the law requiring notice to the endorser. The position assumed by the appellee does not conflict with the correctness of our views, for none of the authorities upon which he relies, go further than to maintain "that where the parties reside in the same place, notice must be left at the residence or place of business, or reach him personally." And, if that object be accomplished, the object of the law is met, even in the view taken by the other side. This object the penny-post accomplishes, delivering the notices twice a day at the *residences* and *places of business* with a degree of certainty quite equal to that of any other mode of delivery. The system of delivery by the penny-post is one of comparatively recent date, and no authorities can be properly appealed to as negativing our views, where it does not appear that the decisions were made in reference to the penny-post, or where there is no proof that the party is regularly supplied by the penny-post. The authorities cited by the appellee in 3 *Ala.*, 3 *McLean*, 8 *Foster*, 3 *Kernan* and 6 *How.*, will each be found obnoxious to one or both objections; and in no one of them was there any evidence that the party to be charged was supplied by the penny-post. In this case the evidence is explicit, by the notary, that he placed the notice, mentioned in the protest, in the Post Office, on the afternoon of the day when the note became due, and the carrier proved that, in that event, the notice must have been taken by him the next morning to the residence of the defendant.

---

Walters & Harvey *vs.* Brown.

---

*Geo. H. Williams*, for the appellees:

The plaintiffs (the holders) and the defendant being proved to be residents of Baltimore city, the only sufficient notice to bind the defendant would be by *personal* service of the notice of dishonor, or by leaving it at his place of residence or business, and, under such circumstances, depositing a notice in Post Office will not suffice. Where the endorser, and the party from whom he is to receive notice, reside in the same place, such service of notice is required, and no case can be found, even in England, where a *penny-post* has been held the proper means of communicating notice, save, only, in the city of London, where it was adopted by usage. In this country the rule is *universal*—the notice must be *personal*, or left at the place of business or the residence of the party to · be charged, where both reside in the *same place*. 6 *How.*, 248, *Bowling vs. Harrison*. 3 *McLean*, 96, *Hyslop vs. Jones*. *Ibid.*, 583, *Hill vs. Norvell*. 3 *Ala.*, 34, *Foster vs. McDonald*. 8 *Foster*, 302, *Manchester Bank vs. Fellows*. 3 *Kernan*, 549, *Van Vechten vs. Pruyn*. 4 *Sneed*, 390, *Davis vs. Bank of Tennessee*. 3 *Camp.*, 362, *Beveridge vs. Burgess*. The remark in *Bell vs. Hagerstown Bank*, 7 *Gill*, 225, that in large commercial cities notice may be given through the *penny-post*, was entirely outside of the case there before the court, and cannot be regarded as settling the law for this State on this subject.

*Note.*—The argument on other points is omitted.

ECCLESTON, J., delivered the opinion of this court:

This action of *assumpsit* was instituted in the Court of Common Pleas for Baltimore city, upon a promissory note for four hundred and thirty-one dollars and eighty-four cents, drawn by John F. McJilton, and indorsed by Edward Spedden, Samuel Brown and W. T. Walters & Co. The note is dated, "Balto., February 1857," and all the parties to the same reside in Baltimore.

The defendant pleaded "that he did not promise as alleged:" to which the plaintiffs joined issue.

Walters & Harvey vs. Brown.

The verdict and judgment being in favor of the defendant the plaintiffs appealed.

A denial of the plaintiffs' right to recover is based upon the absence of sufficient proof of due notice to the defendant, of the non-payment of the note; there being no dispute in regard to the making, or to the regular indorsement thereof.

It was duly protested; and the notary certified that on the same day he addressed written notices to the indorsers, informing them the note had not been paid, payment thereof having been demanded and refused, and that they would be held responsible for the payment thereof; that notices for the first and third indorsers he left at their places of business, and notice for Samuel Brown, he enclosed him, and put in the Baltimore Post Office.

The partnership of the plaintiffs was proved; they then examined, as a witness, Wilson M. Carey, a notary public, duly commissioned in and for the city of Baltimore.    He testified that after the said note had been handed to him for protest as such notary, he went to inquire, he thought personally and not by one of his clerks, at the places of business of the plaintiffs, and also of the maker of said note, as to the residence or place of business of the defendant; that he did not find the plaintiffs or maker to respond to such inquiry and not knowing himself where the defendant lived or had his place of business, he deposited a notice of the dishonor of said note in the Baltimore Post Office, directed to Samuel Brown, Baltimore.    The witness said he knew the place of business of Edward Spedden, which was in North street near Fayette street, and he looked in the directory and found the names of several persons therein named Samuel Brown; and being asked why he did not call upon the persons named Samuel Brown, as therein indicated, said he had no time to call upon them, he had twelve or fifteen notes to protest on that day.

The plaintiffs' witness, Gehrman, testified "that he had been for the last six years a letter carrier in the Baltimore Post Office, and that all letters which came into the penny-post of the Post Office for distribution by the penny-post of the

office, and were directed to Samuel Brown, Baltimore, were delivered, by witness to the defendant as the only Samuel Brown who was served by the penny-post of said office; that said defendant was a well known citizen and lived on Eutaw street in said city; and that letters dropped in the office in the morning, were, in the course of business, delivered to him in the evening; and letters dropped in the evening were delivered the next morning."

The defendant offered no evidence, but asked the court "to instruct the jury, that there is no sufficient evidence of notice to the defendant of the non-payment of the note for which this suit is brought," which instruction was granted.

The plaintiffs submitted the two following prayers, which were refused.

1st. The plaintiffs pray the court to instruct the jury, that if they shall find from the evidence that the promissory note offered in evidence was drawn by John F. McJilton, and endorsed by the defendant, and upon the day of the maturity of the said note it was not paid, and it was delivered by the Cashier of the Farmers and Planters Bank of Baltimore, to Wilson M. Carey, notary public, for protest, and that the said notary made, or caused to be made, diligent inquiry as to the residence of the defendant, and was unable to ascertain the same, and that on the same day he addressed a written notice to the defendant informing him of the demand upon the drawer and the non-payment of the note, and that the said defendant was held responsible for the payment of the same, as set out in the protest offered in evidence; and that he sealed and directed said notice to the defendant at Baltimore, and deposited the same in the Baltimore Post Office; and if the jury shall further find from the evidence in the cause, the defendant was then a resident of the city of Baltimore, and that it was the constant and uniform practice of the penny-postman, attached to the Baltimore Post Office, to deliver at the residence of the defendant on the same day, or on the day succeeding, all letters deposited in said office directed to him, then there is sufficient evidence in the case to establish such notice to the defendant

of the dishonor of the note as to enable the plaintiffs to recover in this action.

2nd. If the jury shall find from the evidence that the said note was drawn by John F. McJilton and indorsed by the defendant, and that upon the day of its maturity it was not paid, and that the same was delivered to the notary for protest, and that the said notary was not able to find, after reasonable inquiry, the residence or place of business of the defendant, and on the same day deposited the said notice, as set out in said protest, in the Baltimore Post Office, directed to the defendant at Baltimore; and if the jury shall further find that the defendant received the said notice on the same day, or the day succeeding, then the plaintiffs are entitled to recover.

The important inquiry in this case is, whether the notice of non-payment of the note, sent to the defendant through the Baltimore Post Office, was sufficient to render him liable on the note ?

It is a well settled *general rule*, that where the endorser and the party who is required to give him notice, reside in the same town or city, the notice must be given to him personally, or at his domicil, or place of business. And a letter containing the notice of the dishonor, put into the Post Office of the same town or city, directed to the endorser will not be a sufficient notice. If, however, it should be proved that the notice so put into the Post Office did actually reach the endorser, the notice will be sufficient.

Mr. Justice Story, in his work on *Promissory Notes, section* 322, states the rule on this subject. Then, in section 323, the learned author advances the doctrine that where in large towns or cities there is a letter carrier or penny-post, who carries letters daily from the Post Office, to the houses or places of business of the parties, who are accustomed to receive their letters by him there, if the notice be left at the Post Office early enough to go by such letter carrier or penny-post to the party the same day he is entitled to notice, it will be deemed sufficient.

In a note to section 323, Judge Story quotes the language

of *Chitty on Bills, page* 504, where it is said: "Notice of the dishonor of a bill sent by the two-penny-post is sufficient, where the parties live within its limits, whether near or at a distance from each other, but it must be proved that the letter, conveying the notice, was put into the receiving-house on the next day at such an hour, that, according to the course of the post, it would be delivered to the party to whom it is addressed, on the day when he was entitled to receive notice of the dishonor."

The doctrine announced by Judge Story, in the section last referred to, is also to be found in 3 *Kent's Com.*, 107, (*5th Ed.*) The distinguished author there says: "Where the parties live in the same town, and within the district of the letter carrier, it is sufficient to give notice by letter through the Post Office. If there be no penny-post that goes to the quarter where the drawer lives, the notice must be personal, or by special messenger sent to his dwelling-house or place of business, and the duty of the holder does not require him to give notice at any other place."

The language used by Mr. Justice Grier, in delivering the opinion of the Supreme Court, in *Bowling vs. Harrison,* 6 *How. Rep.*, 258, has been referred to as inconsistent, and, indeed, in direct conflict with the doctrine herein before stated. It is true, the rule for giving notice, where the parties live in the same town or city, is said to require personal service, or service at the residence or place of business; and if the endorsers live at a distance, so that such a service would be inconvenient and expensive, the notice should be sent by mail to the nearest Post Office, or such other place as may have been designated by the party who is to receive it. It is then said: "This is, and has been, the daily practice and construction of the rule in question over the whole country, and the only one consonant with reason." But the language should be considered with reference to the case then before the court; and not as intended to express an opinion upon a state of facts not presented by the record. It appears the defendant lived in Vicksburg, Mississippi. The plaintiff resided in Maryland, and had

Walters & Harvey *vs*. Brown.

placed the note in the office of the Planters Bank at Vicksburg, for collection. Notice of the non-payment was put into the Post Office at the latter place. There was no evidence tending to show the existence of a penny-post. Neither was there any question presented, by the argument of counsel, or considered by the court, as to whether the notice through the Post Office would, or would not, have been sufficient, if there had been a penny-post.

In *The Bank of Columbia vs. Lawrence*, 1 *Peters' S. C. Rep.*, 582, the court say: "When a party entitled to notice has, in the same city or town, a dwelling-house and counting-house, or place of business, within the compact part of such city or town, a notice delivered at either place is sufficient, and if his dwelling and place of business be within the district of a letter-carrier, a letter containing such notice, addressed to the party, and left at the Post Office, would also be sufficient." The court then add: "All these are usual and ordinary modes of communication, and such as afford reasonable ground for presuming that the notice will be brought home to the party without unreasonable delay. So when the holder and endorser live in different post-towns, notice sent by the mail is sufficient, whether it reaches the endorser or not. And this for the same reason, that the mail being a usual channel of communication, notice sent by it is evidence of due diligence. And, for the sake of general convenience, it has been found necessary to enlarge the rule."

In *Bell vs. The Hagerstown Bank*, 7 *Gill*, 225, after stating it to be necessary for personal notice to the endorser, or else that notice should be left at his residence or place of business, where the parties reside in the same place; the Court of Appeals then say: "Unless by the usage of a particular place, a different mode of notice is resorted to. As in large commercial towns, it is now the uniform practice to reach the party to be affected by the notice through the post-office, when the parties both reside within the limits of the penny-postman. 'But it must be shown to have been put in, time enough to be delivered before the expiration of the day following the dishonor.'"

Walters & Harvey *vs.* Brown.

The practice has been long established, of allowing notice to be sent through the Post Office, where the parties reside in different places. And if it be proved that notice has been put into the office, soon enough for the party to receive the same in due time, according to the regular course of the mail, the notice will be sufficient, although it may never have been received. If so, there would seem to be no good reason why notice should not be considered equally sufficient, when sent through the post-office, in a large commercial city, where the parties live within the limits of a penny-post, or letter carrier, whose duty it is to carry letters from the Post Office daily, and the party entitled to notice, is accustomed to receive his letters from such carrier.

In this case the notice was put into the Baltimore Post Office the same day the note was protested. The letter carrier, who, in that character, for six years, had been connected with the Post Office, testified that all letters which came into the penny-post of that office, for distribution by the said letter carrier or penny-post, and were directed to Samuel Brown, Baltimore, were delivered to the defendant, as the only Samuel Brown who was served by the penny-post; that the defendant was a well known citizen, living in Baltimore. And that, according to the regular course of business, the notice put into the Post Office the day of the protest of the note, should have reached him the day after, in the morning.

Believing that the notice sent through the Baltimore Post Office, under the circumstances of this case, was sufficient notice to the defendant, we think the instruction asked by him should not have been granted. The judgment, therefore, will be reversed.

Having thus decided the notice given to be sufficient, it is not necessary to inquire whether there was or was not error in refusing the plaintiffs' prayers.

*Judgment reversed and procedendo ordered.*

(Decided April 18th, 1860.)