W. Lee Morris *v.* Missouri State Life Insurance Company

(No. 7588)

Submitted October 31, 1933.   Decided November 7, 1933.

*Strother, Sale, Curd & St. Clair, File, Goldsmith & Scherer,* and *Harold D. Knight,* for plaintiff in error.

*Harman & Howard,* for defendant in error.

MAXWELL, PRESIDENT:

This is an action for recovery under the disability clause of a group policy of life insurance issued by defendant to McDowell County Employees' Association. To a judgment for plaintiff for $3,000.00 based on verdict, defendant was awarded writ of error.

Under said policy members of the county court and heads of departments were eligible to insurance in the sum of $3,000.00; other county employees, $2,000.00. There was issued by the defendant to the plaintiff a certificate identifying him as one of the persons protected by said policy.

The policy contains a total and permanent disability clause, whereby the company obligated itself to pay to an insured individual under the age of sixty the full amount of insurance operative as to such individual upon due proof that he has become "totally and permanently disabled by bodily injury or disease, and that he or she is then, and will be at all times thereafter, wholly prevented thereby from engaging in any gainful occupation, and that he or she has been so permanently and totally disabled for a period of six months * * *." In August, 1932, the plaintiff asserted claim against the defendant for $3,000.00, the amount specified in his certificate, on the ground that he had been totally and permanently disabled for six months prior to the making of such claim.

In August, 1930, plaintiff had become a deputy sheriff of said county receiving a salary of $25.00 per month. As such employee he was paid monthly until August, 1932, with the

exception of November, 1930. His application for insurance was made December 1, 1930. All premiums chargeable against him were paid.

By its specifications of defense, defendant says that plaintiff's said certificate was obtained by fraud in this, (a) that the plaintiff represented himself to be a full time employee of the county of McDowell, which he was not; (b) that the plaintiff represented himself to be eligible to $3,000.00 insurance under said policy whereas he was neither a department head nor a member of the county court which classifications and none other would entitle him to $3,000.00 protection under the policy; (c) that the plaintiff in his application falsely represented the time of the beginning of his employment and thereby avoided a provision of the policy which would have required him to furnish evidence of insurability satisfactory to the company; and (d) that the plaintiff is not totally and permanently disabled by disease so as to entitle him to the disability benefits provided by the policy.

First as to disability. It appears from the evidence that at the time of trial, the plaintiff was a patient in a tuberculosis sanitarium where he had been receiving treatment for many months. Several doctors who had examined him gave testimony. The weight of their testimony is that the plaintiff is permanently and totally disabled. Although one or two of the doctors express the hope that he may some day be restored to a condition of health which will permit him to be gainfully occupied, the spirit of optimism thus exemplified should not deprive the plaintiff of the benefits of the classification wherein his unfortunate illness has placed him. We certainly could not say as a matter of law that the jury was not warranted in finding that the plaintiff is permanently and totally disabled.

As to fraud. It appears from the record that when plaintiff made application to be included under the said group policy, and, a little later, on the basis of said application, received a certificate identifying him as one of the persons entitled to the protection of said policy, he was not a full time employee of the county of McDowell, he was not a member of the county court or a department head, nor had he begun his employment at the time stated in his application. These matters all involve misrepresentations of fact, or, in other

words, fraud in the procurement of his certificate. Ordinarily, this would vitiate his claims under the policy, but there is an incontestability clause in the policy. It reads: "This policy shall be incontestable after one year from its date of issue, except for non-payment of premium." The policy was issued July 11, 1930. Plaintiff's claim against the company for benefits under the disability clause was first asserted in August, 1932. Much more than one year had elapsed.

Many cases have dealt with incontestability clauses of life insurance policies. The holdings seem unbroken that under such clause, especially where it does not become operative from the date of the policy but from a later date fixed by the policy, fraud in the procurement of the policy cannot be made a defense subsequent to the date fixed by the policy when it shall be deemed incontestable. *Harrison* v. *Relief Ass'n.*, 126 S. E. (Va.) 696; *Flanigan* v. *Insurance Co.*, 231 Ill. 399, 83 N. E. 178; *Lavelle* v. *Insurance Co.*, (Mo.) 238 S. W. 504; *Humpston* v. *Life Assurance Co.*, 148 Tenn. 439, 256 S. W. 438; *McGinnis* v. *Insurance Co.*, 180 Ind. 9, 101 N. E. 289; *Dibble* v. *Insurance Co.*, 170 Cal. 199, 149 Pac. 171; Joyce, The Law of Insurance, (2nd Ed.) Vol. 2, p. 1951; and Richards, Insurance Law (3rd Ed.), p. 532.

A succinct statement is found in 8 Couch on Insurance, section 2155: "It also logically follows that inasmuch as incontestable clauses are not against public policy, and are valid and enforceable, every defense within the terms of, or covered by, such clauses, or which is not excepted therefrom, is precluded if not taken advantage of before the clause becomes operative in favor of insured, and this, by the weight of authority, includes the defense of fraud or false statements or warranties in the application for insurance, not for the purpose of condoning the fraud, but as fixing a time beyond which it may not be set up or established * * *." The following pertinent observation from Cooley's Briefs on Insurance (2d Ed.), Vol. 5, at page 4484: "Such a stipulation ought to be an incentive to the insurer to exercise vigilance and good faith in investigating the truth or falsity of the representations upon which the policy is issued, while the matter is fresh, and thus it operates fairly between the parties." Further, from a New York case: "It is to be presumed that

the defendant had some purpose when it offered to the insured a contract containing the stipulation and that the stipulation itself had some meaning.'' *Wright* v. *M. B. L. Association*, 118 N. Y. 237, 23 N. E. 186.

But the defendant says that the policy had been cancelled on August 1, 1932, which was five days before plaintiff's claim was first asserted, and therefore it is said that there is no possible basis for plaintiff's claim. For some reason, not appearing in the record, H. K. Carper, clerk of the county court of McDowell County, secretary-treasurer of the McDowell County Employees' Insurance Association, telegraphed the defendant at its home office in St. Louis, Missouri, August 1, 1932, cancelling the policy. This was done without the knowledge of the plaintiff. The right of the secretary-treasurer to cancel the policy in any such summary manner does not appear from the face of the policy. We do not understand on what basis this could be presumed to be done. In any event, plaintiff's rights having attached under the disability clause of the policy, he cannot be deprived of the benefits thereof by a purported cancellation, so readily acquiesced in by the defendant.

Perceiving no prejudicial error we affirm the judgment.

*Affirmed.*